Welcome. Our first case is 22-3133, United States v. Landa-Arevalo. And Mr. Loon, you're for the appellant. Good morning. May it please the Court. It's good to be back in a real close to you. This case represents the intersection of what the Supreme Court has called two fundamental constitutional rights. One of them is the right that an incompetent defendant not face criminal trials or proceedings. And the other is the right to a speedy trial, so the defendant is not prejudiced by oppressive pretrial incarceration. The first of these involves the right that the defendant be able to understand the nature and object of proceedings against him, that he be able to consult with his counsel, and that he be able to assist in the preparation of the defense. There can be procedural issues that come about in this case. For example,   by the failure to hold a competency hearing where there's a bonafide doubt about the competency of a defendant. And this can arise either by a judge not allowing any competency evaluation when one is requested, or by the failure to conduct an adequate competency hearing. Now, this case involves kind of a two-staged situation, because the trial judge, as you probably recall, did not allow a competency evaluation at all, even though it had been requested at the last minute following the time that the defendant had been completely incapable of consulting with an attorney who had been assigned specifically to bring a plea offer to him. And then that judge, who had handled the case, left the bench, and then a successor judge came in, and he allowed what was called a turnaround competency exam. But our position is that that turnaround competency exam, which explored whether or not he might have even been competent to stand trial, was insufficient. In fact, we went through a great deal of detail in the brief at pages 46 and 47 of the testimony from Dr. Gilbert, who was the psychologist who dealt with the defendant when he came to the Bureau of Prisons psychiatric hospital. And she said that she couldn't fully evaluate his competency the way that she normally would. She noted, and this is one area that is particularly obvious in terms of the inadequacy of the competency examination, which is whether an automobile accident that he had where there had been head trauma adversely made it such that he was incapable of processing information correctly. And she indicated in her testimony that she didn't have time to do a proper examination, nor was there time to do a consultation with a neurophysiologist. And that that was something that was available only with the four-month Bureau of Prison time. She was asked about what this type of head trauma situation could bring about, and she answered that the person would potentially not be capable of processing information, misinterpreting events, impulsive behavior, and not just understanding things correctly. Didn't Dr. Gilbert, though, conclude that he was competent for purposes of resentencing? No. I think she wrote a report, which was the sort of initial report. It's like you go to the doctor, and you have your annual exam, and he has a sort of a limited period of time to look at you. And he tests your heart, and he looks at your fingernails, and he says it looks like everything's pretty good. And she commented that there were things about him that looked like they were good. He was coherent. He did participate. But the point is that in cases such as these, where you have these issues, such as personality disorders, or you have situations where an untrained person has difficulty identifying things, she rather clearly in her cross-examination said that she needed more time. She couldn't conduct a full evaluation. And this also applied not only to the head trauma issue, but it also applied to the perseveration issue, which was a really serious problem here. She pointed out again that he appeared to be coherent in a lot of ways, but that his perception of events in many ways appeared to be askew, that he seems to focus on irrelevant and unimportant details, which keep him stuck and unable to move on without significant conversation. And the consequences are that this type of mental illness could have been a cognitive disorder or a mental illness, and she said, I could not assess it due to the limited participation that she had. So she needed more time in order to conduct a better, more extended evaluation. At the four-month clinic, everything that was said about perseveration and everything that was said about the head trauma issue was dealt with by the attorney for the defendant in these hearings when she appeared at the successor judge's hearing. And she told the judge that an educated person such as this defendant had been, he'd been a nurse for 20 years, and after the car accident, he'd become completely unemployed. The defendant himself had told the judge about the car accident, this is the trial judge, and he told him that he had confusion about these things. In the order that comes out of the successor judge's court, he only makes the comment that Dr. Gilbert indicated that he had said, the defendant had said that he had no lasting issues. But that hardly addresses the head trauma issue here, because there's substantial evidence that there needed to be a proper neurological examination done. We also have the, the judge was able to observe Mr. Lando in action, you know, his interactions with counsel and the court. Doesn't that, and you know, he wrote a fairly detailed order on this. Well, not really. The answer, at least under Tenth Circuit case law, is not really. The Williams case talks about the ability to recite charges, list witnesses, legal terminology, use proper terminology, or even having a colloquy with the trial judge. And that's the Pei case does not carry the ball here. Is it fair to say that the evidence before the trial judge, evidence, you know, not suggesting things were admitted, but the things available to the trial judge to observe when he was originally denying a competency hearing, that there was a lot of indication to him that this was a difficult and manipulative person who, I mean, could have appeared to the trial judge to be someone who was just trying to game the system? I doubt, I would say that that's a good possibility. But that's why you needed to have the longer, you needed to have the longer period. Because as Lafferty points out, the type of mental illness that we're dealing here is something that's difficult to recognize by untrained people. And certainly the judge in this case wouldn't qualify as a trained person. I'd like to move briefly, while I have time, over to the speedy trial issue. And I, you're certainly familiar with the Barker v. Wingo categories. Certainly the length of delay in this case is at 39 months. It's far beyond anything that the founding fathers would have ever envisioned. And it's at least three times what is deemed to be ordinary in cases that have been discussed by this court, such as the Seltzer case, where it found two years to be twice the ordinary period of delay. The reason for the delay, the government bears the burden. And the reason, principally, was because the government wanted to try all these defendants together. Counsel, getting back to when he asserted the speedy trial act, or not speedy trial act, speedy trial right, he did it always in the context of seeking severance from the other defendants, correct? He did, at least on two instances. Is that enough? I think it is. Because we really need fact-finding, don't we? And is his assertion of those rights enough to generate or tip the trial judge off that we need to do some fact-finding? They certainly went through all of the categories that Barker v. Wingo deals with in these types of speedy trial situations. Those were argued by both, two separate trial counsel, and they both requested that he have a speedy trial. I think the issue was properly before the court. He didn't actually file a motion saying, I'm asserting, specifically, a speedy trial constitutional claim. Oh no, they mentioned the Sixth Amendment. In fact, both attorneys, in both of their two separate hearings, specifically mentioned the Sixth Amendment, in both citations and not only sever me, but you need to dismiss the claims against me. They did not say, you need to dismiss the claims. That's right. You would need to do that if you were trying to assert something under the Speedy Trial Act, but the legislative history of the Speedy Trial Act makes it rather clear that the Speedy Trial Act is different from the Sixth Amendment, and they certainly raised the argument under the Sixth Amendment. On the severance issue, how many other defendants were tried with him? The initial case... No, I'm talking about the trial. Oh, the trial. There's only one. The judges let everybody else plead out over time, and so finally... That includes Rodriguez, the principal witness against him. At 39 months, they finally have the trial of my defendant exclusively. By this time, the issue, of course, in these types of cases is whether there's prejudice. You go back to Dr. Gilbert, and she testifies that he had an adjustment disorder that became aggravated over the period of time that he's incarcerated for 39 months. By the time you get to this trial, as she told the judge what happened, it was an absolute disaster. He doesn't understand due process because she doesn't have any communication with him. How is that claim of prejudice affected by the second judge's first order? Excuse me, first order, that he was... Excuse me, second order, the retroactive competency analysis. Yes. How is that... Doesn't that affect the claim of prejudice from mental breakdown? I'm not sure I'm following your question. Well, there was a determination that he was competent to be tried retroactively. Yes, and... Doesn't that affect his claim of prejudice because of his diminishing mental capacities? The judge's order, we believe, was in error based on all of the reasons that we cited because there were a number of things, not only just his inability to work out a plea agreement or even discuss it, his blurt outs in the court where his lawyer testifies that she simply... This is a person who didn't seem to comprehend anything about due process, and she wasn't able to talk with him about it because of his mental health problems. So those issues were addressed, but they were only cursorily addressed in the judge's, the successor judge's order, and he didn't address all of the concerns that the psychologist had about his mental well-being, and that's how these things played into, and he also didn't address the fact that the defendant had... His anxiety disorder had become aggravated during the 39 months that he was incarcerated. I'd like to reserve the remainder of my time. Yeah, you may. Thank you. May it please the court, Carrie Capwell... Would you speak right into the microphone instead of moving her away? Yes, may it please the court, Carrie Capwell for the United States. The district court here did not abuse its discretion in finding that the defendant was more likely than not competent to continue to sentencing, and that he did not require an additional four-month evaluation. The court here relied upon Dr. Gilbert's report as well as her testimony at the hearing. Dr. Gilbert is a forensic psychologist. She is a professional. It was a professional's opinion upon which the district court relied in addition to the court's own observations of the defendant, and while Dr. Gilbert did document that she wasn't able to do all of the evaluation and analysis that she would have liked to do, she did thoroughly study defendant's jail calls to his daughters, emails as well, and through evaluating those, she determined that there was no evidence of any kind of disordered thought process, delusion, or any symptoms that would be associated with severe mental illness. She was also able to interview the defendant on a number of occasions, and he indicated to her that he wanted to reserve those types of conversations for his attorney, indicating that he was guarding a privilege that he was aware of. Dr. Gilbert's conclusion was that the defendant did not appear to be suffering from any severe mental illness or cognitive deficits. There was no evidence of delusional thinking or paranoia, no noticeable deficits. She noted that he was aware of his immigration and deportation consequences. I believe that she learned that through listening to conversations that the defendant had had with his older daughter. All of this information that she acquired, she also looked through his medical records, and she noted that although he had been in a serious car accident, he had reported no lasting issues regarding injury to his head. It was mostly injury to his back and joints that he had complained of, and this was consistent with pretrial services, what he told them, which was he complained of back and joint problems and occasional migraines, but did not emphasize any kind of long-lasting head injury. The court relied properly on Dr. Gilbert's testimony at the hearing, as well as the court's own observations of the defendant, his interactions in court, his interactions with counsel, and the district court's conclusion that the defendant was more likely than not competent to continue was a rational decision. The defendant is not able to prove that the district court abused his discretion in any way, and the decision was based on a rational and permissible view of the evidence. The doctor's diagnosis was tentative, in a sense. She thought that the longer inpatient procedure would have been definitive. We don't have that, so it's kind of like a halftime conclusion on her part. We've read the report. We know what it says, but still, she didn't believe it. She hedged her bets a little bit and thought that a longer observation period would be definitive. Why shouldn't that weigh fairly heavily in favor of the defendant here? Well, I believe, Your Honor, that she did have the amount of time allocated under the statute. She was able to, as I mentioned, do a lot of her own analysis. As I read the report, an additional four-month evaluative period and analysis of restoration and whether that would be possible, the court would have had to find, by a preponderance of the evidence, that the defendant was mentally incompetent, based on what the court knew at that time. Here, the court did not abuse its discretion in any way in finding that simply the defendant had not met his burden to establish that, by a preponderance, that he was mentally incompetent and would require further evaluation by the Bureau of Prisons. I would also like to point the court to the District Court's April 2022 denial of the defendant's motion for a new trial. First, the government argues that the defendant or the appellant here did not challenge the District Court's order in that respect, which found both that there was no due process violation, procedural due process violation, or substantive due process violation, finding that the defendant was competent to stand trial and was competent at the time of trial. We argue that he waived that argument by not raising it in his principal brief, and when he filed a reply, that his reply did not adequately brief the issue such that he did not raise a plain error argument. He points, really, I believe there's one or two paragraphs in the reply, and they do not point the court to specific locations in the opening brief that challenge the District Court's, whether it's the District Court's factual findings or the District Court's legal findings. So we argue that the defendant has not raised that argument here. I will move to the speedy trial claim at this point. Here, there was no speedy trial violation. The defendant did not assert any right to a speedy trial, even if we can consider it a claim, until more than 14 months after his arraignment. And even then, as Your Honor, Judge Murphy pointed out, the assertion was not a claim for a motion to dismiss the indictment based on a violation of constitutional... He concedes, there was 39 months that passed from the time of the indictment, correct? Correct. And he concedes that the first 14 months should not be counted in the speedy trial analysis. And that's when he started asserting his right to a severance because his speedy trial rights would be violated. Wasn't that what he was saying? Your Honor, he does mention in one severance motion, he does raise that if the court were not to sever, it could endanger his Sixth Amendment right to a speedy trial. You make it sound like he only said that once. He said it more than once. And then at the hearing as well, on the motion, I believe on June 14th of 2017, he referenced his right to a speedy trial under the Sixth Amendment. But at no point did he actually make a claim or file a motion arguing that his indictment should be dismissed on that basis. If a trial judge is sitting there, all these months have gone by, and he mentioned speedy trial rights. He wants to be severed from these people because he thinks they're interfering with his ability to proceed. But his speedy trial rights are not? I mean, he keeps asserting, he's asserted speedy trial rights many times. Shouldn't that just alert the trial judge? I need to address that. Your Honor, I would argue that it was a, if anything, it was a weak assertion of his speedy trial rights, which were enveloped within his motion to sever. Do you have any authority that says, when you raise a speedy trial act, you must do so by a motion to dismiss? No, Your Honor. All right. So something less must be acceptable, correct? That's correct, Your Honor. And you're saying this is too far less. And it weighs against the defendant in the balancing because of the weak way in which the claim was asserted. Now, the reasons for the delay, at least after the first 14 months, so we have over two years after he's talking about speedy trial acts, that the trial is delayed, correct? That's correct, Your Honor. And essentially, it's done so because the co-defendants want to get more discovery. They want to do this. They want to do that. But he wants to proceed, correct? That's correct, Your Honor. And the analysis was, in the complex case, the conspiracy case, there is an interest, public interest, in trying everybody together, correct? Yes. But at some time, that public interest is overcome by an individual defendant's right to a speedy trial, isn't it? Yes, Your Honor. There can be times, certainly, when severance would be appropriate. Didn't that time come before the passage of two years? Well, here, Your Honor, the reasons were valid reasons for the delay. We had- At least vis-a-vis the other defendants. Yes, there was a new counsel that came into the case, new counsel who needed to review all of the voluminous discovery. The court had previously found the case, deemed the case to be complex. There were motions that the defendants, the co-defendants, wanted to discuss with their attorneys to have filed. So there were valid reasons for the various periods of delay leading up to the eventual trial. At some time during this expanse of over two years, shouldn't a trial judge be thinking, well, there are valid reasons as to the other defendants, but there's no valid reasons as to him? I think, Your Honor, here it was the interest in conserving the judicial resources and having one trial at one time. This was a multi-defendant case with, I believe, seven plus defendants. And it ends up there's only one defendant, correct? Yes, yes. The other defendants did resolve their cases through pleas and plea agreements. Let me ask you this. If we think that the delay of over two years, he certainly prevails on that factor, the length of the delay. It's a long time. Wouldn't you agree? We conceded, yes, we conceded that the length of delay is in his favor. You dispute the reasons for the delay, that that favors him. But just assume we decide that that does favor him, because at some time, you need to recognize his rights alone versus the group of defendants' rights. Assume that. And the question of assertion, just assume that we find that he asserted enough. The trial judge was alerted there were some speedy trial rights here. And that leads prejudice. Is that factor informed at all by the district court, judge number two, second order on competency? Yes, I believe so, Your Honor, because the district court found that the defendant at the time before trial and during trial was competent to stand trial, such that he was not suffering from any severe mental illness or anything that would have prevented him from being able to understand all the charges, the case. You would agree that his approach to things was not helpful to him? The defendant's approach? Correct. And it was caused not by incompetency, but some problems going on mentally. Would you agree with that? Your Honor, not necessarily. It seemed like he may have had a strategy to delay his case. Dr. Gilbert even mentioned that in one of her reports, that the delays may have been intentional to avoid deportation. As to mental acuity, would you agree that it's not required as a factor of prejudice that there actually be a determination of competency? That doesn't necessarily mean that that factor cannot weigh in his favor. Correct. They're not mutually exclusive. He does have to prove prejudice, make a particular life showing, which he has not done. Then let me ask you this. Would there be any benefit to a remand for findings on factor number four if we find the other three against you, and that is the prejudice factor? Your Honor, I don't think that would be necessary here. The defendant, there's a very lengthy record in this case. There's a hearing on competency. There are multiple. But the context has never been in a speedy trial context. It's been in the context of competency to be tried. And you've acknowledged you can have something less of an aggravated finding about competency in order to have it be a prejudicial factor. I don't think, Your Honor, that a remand would be necessary here on that factor. I think the record, there's enough in the record to show that the defendant failed to make the particular showing of prejudice here. The only prejudice he claims, and I see my time is up. I just finished this thought. The only prejudice he has claimed is oppressive pretrial incarceration. And the record demonstrates that much of that is due to his own conduct. But not after 14 months. For 25 months, it's not his problem, right? He wasn't delighting. The reasons were due to the other, yes, the other, the co-defendants. All right, thank you, counsel. Thank you. Could you please give him a total of a minute? One minute for the rebuttal. Yeah, thanks. Thank you. In those 39 months preceding trial, when you look at the record, and I have this on page 27 of my reply brief, the defendant's attorneys raised the issue of either opposing contingencies or expressly requesting a severance and getting on to trial seven times. And during those seven times, the Sixth Amendment was listed five of those times. Tell me what accounts for the different count. Your opposing counsel says two in the context of severance. You say seven? There's a total of seven times when he opposes contingencies and also asks for severance. Explain the different countings. Why is there such a wide variety? You say seven, she says two. There are just different times. We have lots of hearings in this case, and it comes up at different times. Either the attorney is trying to do a motion, and he's saying, I don't want this to happen. I raise my Sixth Amendment rights, which suggests he wants to go to trial. But it does happen numerous times. You're correct. What was the prejudice other than being incarcerated during that 25-month period? How did it affect his trial? He has clearly, based on Dr. Gilbert's testimony, his anxiety disorder is aggravated. And his inability to control himself with regard to this particular perseveration issue and address those types of problems, he was not able to deal with his own attorney. In fact, he was not able to deal with Ms. Williams. Those are things that affected him during the course of the trial. All right, thank you, counsel. Appreciate your arguments. Counsel are excused, and the case will be submitted.